**No. 23-30480**

IN THE

# United States Court of Appeals
## for the Fifth Circuit

---

TESLA, INC.; TESLA LEASE TRUST; TESLA FINANCE, L.L.C.,
*Plaintiffs-Appellants*,

v.

LOUISIANA AUTOMOBILE DEALERS ASSOCIATION, In itself and on behalf of
its members, executive committee, and board of directors;

**(CAPTION CONTINUED ON INSIDE COVER)**

---

On Appeal from the
United States District Court for the Eastern District of Louisiana
The Honorable Sarah S. Vance
No. 22-cv-02982-SSV-DPC

---

**BRIEF FOR THE UNITED STATES OF AMERICA AS AMICUS
CURIAE IN SUPPORT OF NEITHER PARTY**

JONATHAN S. KANTER
  *Assistant Attorney General*
DOHA MEKKI
  *Principal Deputy Assistant*
  *Attorney General*
MAGGIE GOODLANDER
  *Deputy Assistant Attorney*
  *General*
DAVID B. LAWRENCE
  *Policy Director*
JACOBUS VAN DER VEN
  *Counsel to the Assistant*
  *Attorney General*

NICKOLAI G. LEVIN
STRATTON C. STRAND
MATTHEW C. MANDELBERG
BRANDON STORM
  *Attorneys*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
(202) 476-0483
matthew.mandelberg@usdoj.gov

*Counsel for the United States*

GREGORY LALA, In his official capacity as Chairman of the Louisiana Motor Vehicle Commission; ALLEN O. KRAKE, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; V. PRICE LEBLANC, JR., In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; ERIC R. LANE, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; KENNETH MIKE SMITH, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; P.K. SMITH MOTORS, INCORPORATED; KEITH P. HIGHTOWER, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; KEITH M. MARCOTTE, In his Official Capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; WESLEY RANDAL SCOGGIN, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; SCOTT A. COURVILLE, In his Official Capacity as a Commissioner of the Louisiana Motor Vehicle Commission; DONNA S. CORLEY, In her Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and her private capacity; TERRYL J. FONTENOT, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; T & J FORD, INCORPORATED; MAURICE C. GUIDRY, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; GOLDEN MOTORS, L.L.C.; RANEY J. REDMOND, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission; JOSEPH W. WESTBROOK, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity, also known as Bill Westbrook; STEPHEN GUIDRY, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his private capacity; JOYCE COLLIER LACOUR, In her Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission; THOMAS E. BROMFIELD, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission; EDWIN T. MURRAY, In his Official capacity as a Commissioner of the Louisiana Motor Vehicle Commission and his

private capacity; FORD OF SLIDELL, L.L.C., doing business as Supreme Ford of Slidell; GERRY LANE ENTERPRISES, INCORPORATED, doing business as Gerry Lane Chevrolet; HOLMES MOTORS, L.L.C., doing business as Holmes Honda; AIRLINE CAR RENTAL, INCORPORATED, doing business as Avis Rent-A-Car; SHETLER-CORLEY MOTORS, LIMITED; LEBLANC AUTOMOBILES. L.C., incorrectly named as Leblanc Automobiles, Inc.; MORGAN BUICK GMC SHREVEPORT, INCORPORATED, incorrectly named as Morgan Pontiac, Inc.; P.K. SMITH MOTORS, INCORPORATED, in his private capacity; Commissioners of the Louisiana Motor Vehicle Commission and their Dealerships; STEPHEN L. GUIDRY, JR.,

*Defendants-Appellees.*

# TABLE OF CONTENTS

                                                                    Page

TABLE OF AUTHORITIES ...........................................................................ii

INTEREST OF THE UNITED STATES OF AMERICA ..........................1

STATEMENT OF THE ISSUE ..................................................................2

STATEMENT OF THE CASE ....................................................................2

SUMMARY OF ARGUMENT ...................................................................6

ARGUMENT ...............................................................................................7

   I.   CONCERTED ACTION DOES NOT REQUIRE AN ANTICOMPETITIVE
       PURPOSE ...........................................................................................9

   II.  UNREASONABLENESS DOES NOT REQUIRE AN ANTICOMPETITIVE
       PURPOSE .........................................................................................15

CONCLUSION ..........................................................................................22

CERTIFICATE OF COMPLIANCE

# Table of Authorities

Page(s)

## Cases

*Abraham & Veneklasen Joint Venture v. American Quarter Horse
Association*, 776 F.3d 321 (5th Cir. 2014) .................................... 5, 6, 10

*American Needle, Inc. v. NFL*,
560 U.S. 183 (2010) ...................................................... 6, 8, 9, 10, 11, 12

*American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*,
456 U.S. 556 (1982) ................................................................................. 9

*American Tobacco v. United States*,
328 U.S. 781 (1946) ............................................................................... 11

*Arizona v. Maricopa County Medical Society*,
457 U.S. 332 (1982) ............................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 12

*Bolt v. Halifax Hospital Medical Center*,
891 F.2d 810 (11th Cir. 1990) ............................................................... 12

*BRFHH Shreveport, LLC v. Willis-Knighton Medical Center*,
143 S. Ct. 2457 (2023) ............................................................................. 8

*BRFHH Shreveport, LLC v. Willis-Knighton Medical Center*,
49 F.4th 520 (5th Cir. 2022) ................................................................... 8

*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*,
441 U.S. 1 (1979) ..................................................................................... 9

*Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates,
Inc.*, 996 F.2d 537 (2d Cir. 1993) ........................................................... 8

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
499 U.S. 365 (1991) ............................................................................... 12

ii

Page(s)

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000)....................................................................8

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
  433 U.S. 36 (1977) ...................................................................................9

*Copperweld Corp. v. Independent Tube Corp.*,
  467 U.S. 752 (1984)......................................................................9, 12, 16

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*,
  637 F.2d 105 (3rd Cir. 1980) ............................................................11, 12

*Euromodas, Inc. v. Zanella, Ltd.*,
  368 F.3d 11 (1st Cir. 2004) ......................................................................8

*FTC v. Superior Court Trial Lawyers Association*,
  493 U.S. 411 (1990).............................................................................17, 18

*Geneva Pharmaceutical Technology Corp. v. Barr Laboratories Inc.*,
  386 F.3d 485 (2d Cir. 2004) ..............................................................12, 13

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949)................................................................................18

*Golden Bridge Technology, Inc. v. Motorola, Inc.*,
  547 F.3d 266 (5th Cir. 2008).................................................................11

*Gough v. Rossmoor Corp.*,
  585 F.2d 381 (9th Cir. 1978)..................................................................19

*Impax Laboratories, Inc. v. FTC*,
  994 F.3d 484 (5th Cir. 2021)...................................................................18

*In re Insurance Brokerage Antitrust Litigation*,
  618 F.3d 300 (3d Cir. 2010) .....................................................................8

*International Harvester Co. v. Missouri*,
  234 U.S. 199 (1914).........................................................................18, 19

Page(s)

*Johnson v. Hospital Corporation of America*,
95 F.3d 383 (5th Cir. 1996)....................................................................8

*Kaplan v. Burroughs Corp.*,
611 F.2d 286 (9th Cir. 1979)................................................................19

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
359 U.S. 207 (1959)....................................................................10, 17

*Kreuzer v. American Academy of Periodontology*,
735 F.2d 1479 (D.C. Cir. 1984).........................................................18

*Leegin Creative Leather Producers, Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007)............................................................................12

*Marucci Sports, LLC v. NCAA*,
751 F.3d 368 (5th Cir. 2014)..................................... 4, 5, 11, 13, 14, 15

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)............................................................................12

*McLain v. Real Estate Board of New Orleans, Inc.*,
444 U.S. 232 (1980)................................................................8, 16, 19

*Monsanto Co. v. Spray-Rite Service Corp.*,
465 U.S. 752 (1984)....................................................................11, 12

*NCAA v. Board of Regents of University of Oklahoma*,
468 U.S. 85 (1984) .............................................................................18

*North Carolina State Board of Dental Examiners v. FTC*,
574 U.S. 494 (2015)............................................................................10

*North Texas Specialty Physicians v. FTC*,
528 F.3d 346 (5th Cir. 2008)..........................................................7, 16

*Ohio v. American Express Co.*,
138 S. Ct. 2274 (2018) .......................................................................16

Page(s)

*Palmer v. BRG of Georgia, Inc.*,
    498 U.S. 46 (1990) ...............................................................17

*Pulse Network, LLC v. Visa, Inc.*,
    30 F.4th 480 (5th Cir. 2022) .................................................8

*Randy's Studebaker Sales, Inc. v. Nissan Motor Corp. in U.S.A.*,
    533 F.2d 510 (10th Cir. 1976)...............................................8

*Relevent Sports, LLC v. United States Soccer Federation, Inc.*,
    61 F.4th 299 (2d Cir. 2023)....................................................9

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
    792 F.2d 210 (D.C. Cir. 1986)..............................................10

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987).................................................19

*Sherman v. British Leyland Motors, Ltd.*,
    601 F.2d 429 (9th Cir. 1979).................................................19

*Spano as next friend of C.S. v. Whole Foods, Inc.*,
    65 F.4th 260 (5th Cir. 2023) ..................................................2

*Summit Health, Ltd. v. Pinhas*,
    500 U.S. 322 (1991).........................................................7, 16

*Times-Picayune Publishing Co. v. United States*,
    345 U.S. 594 (1953)..............................................................19

*Tunica Web Advertising v. Tunica Casino Operators Association, Inc.*,
    496 F.3d 403 (5th Cir. 2007).........................................11, 17

*Turf Paradise, Inc. v. Arizona Downs*,
    670 F.2d 813 (9th Cir. 1982)...............................................19

*United States v. All Star Industries*,
    962 F.2d 465 (5th Cir. 1992)...............................................20

Page(s)

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015) ...................................................... 13

*United States v. Apple, Inc.*,
   952 F. Supp. 2d 638 (S.D.N.Y. 2013) ........................................ 13

*United States v. Brown*,
   936 F.2d 1042 (9th Cir. 1991) .................................................... 20

*United States v. Brown University in Providence in State of Rhode Island*, 5 F.3d 658 (3d Cir. 1993) ........................................ 19

*United States v. Calverley*,
   37 F.3d 160 (5th Cir. 1994) ........................................................ 20

*United States v. Columbia Steel Co.*,
   334 U.S. 495 (1948) .................................................................... 19

*United States v. Container Corporation of America*,
   393 U.S. 333 (1969) ...................................................................... 9

*United States v. First National Bank & of Lexington,*
   376 U.S. 665 (1964) .................................................................... 10

*United States v. Griffith*,
   334 U. S. 100 (1948) .................................................................... 16

*United States v. Koppers Co.*,
   652 F.2d 290 (2d Cir. 1981) ................................................ 17, 20

*United States v. McKesson & Robbins, Inc.*,
   351 U.S. 305 (1956) .................................................................... 17

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940) .................................................................... 17

*United States v. United States Gypsum Co.*,
   438 U.S. 422 (1978) .......................................................... 16, 19, 20

Page(s)

*Valuepest.com of Charlotte, Inc. v. Bayer Corp.*,
  561 F.3d 282 (4th Cir. 2009)...................................................8

**Statutes**

15 U.S.C. § 1 ..................................................1, 4, 6, 7, 8, 9, 12, 15, 16, 20

28 U.S.C. § 517 ...................................................................1

La. Rev. Stat. Ann. § 32:1253(A).............................................3

**Rules**

Fed. R. App. P. 29(a)(2) .......................................................1

**Other Authorities**

United States Department of Justice, *Justice Manual* 7-2.200,
  https://www.justice.gov/jm/jm-7-2000-prior-approvals (last visited
  October 18, 2023)...............................................................20

Marc A. Fajer, *Taming the Wayward Children of Monsanto and
  Sylvania: Some Thoughts on Developmental Disorders in Vertical
  Restraints Doctrine*, 68 Temp. L. Rev. 1 (1995) ...................................13

## INTEREST OF THE UNITED STATES OF AMERICA

The United States enforces the federal antitrust laws and has a strong interest in their correct application.  The United States files this brief under Federal Rule of Appellate Procedure 29(a)(2) to address the District Court's erroneous suggestion that defendants must have an anticompetitive purpose to violate Section 1 of the Sherman Act, 15 U.S.C. § 1.  Proof of an anticompetitive purpose is not an element of a Section 1 violation, and adding such a requirement would improperly circumscribe the scope of Section 1.  We take no position on any other issues, including the proper disposition of this appeal.

The United States regularly files amicus briefs under Federal Rule of Appellate Procedure 29(a)(2) and statements of interest under 28 U.S.C. § 517 to address the correct legal standards for Section 1 claims.  *See, e.g.*, Brief for the United States and the Federal Trade Commission as Amicus Curiae Supporting Respondents, *Visa v. Osborn*, Nos. 15-961 & 15-962 (U.S. Oct. 24, 2016), https://www.justice.gov/media/863256/dl?inline; Brief for the United States as Amicus Curiae Supporting Neither Party, *Relevent Sports, LLC v. U.S. Soccer Federation, Inc.*, No. 21-2088 (2nd Cir. Oct. 14, 2021), Dkt. 44,

https://www.justice.gov/media/1173396/dl?inline; Brief for United States as Amicus Curiae Supporting Neither Party, *Sulitzer v. Tippins*, No. 20-55735 (9th Cir. Dec. 2, 2020), Dkt. 20, https://www.justice.gov/media/1108541/dl?inline; U.S. Statement of Interest at 8-11, *Henry v. Brown Univ.*, No. 1:22-cv-00125 (N.D. Ill. July 7, 2022), Dkt. 167-1, https://www.justice.gov/media/1230121/dl?inline.

## STATEMENT OF THE ISSUE

Whether establishing a claim under Section 1 of the Sherman Act requires proof of an anticompetitive purpose.

## STATEMENT OF THE CASE

1.  This case involves an alleged conspiracy to exclude Tesla from the Louisiana market because of Tesla's business model of selling, leasing, distributing, and servicing electric vehicles directly to consumers—thereby cutting out local, franchised dealerships. Am. Compl., Dkt. 151, ¶¶ 2-20.[1] The alleged conspirators are the Louisiana Automobile Dealers Association ("LADA"), 18 commissioners of the Louisiana Motor Vehicle Commission (the "Commission") in their

---

[1] These facts come from the amended complaint's allegations, which are "taken as true" on a motion to dismiss. *Spano as next friend of C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262 (5th Cir. 2023).

individual and official capacities, and 10 car dealerships.  Am. Compl.

¶¶ 30-109.  The Commission is an 18-member entity created by the

Louisiana Legislature "within the office of the governor" to enforce

Louisiana's laws regulating the sale, leasing, and servicing of vehicles.

La. Rev. Stat. Ann. § 32:1253(A).  A controlling majority of the

Commission is comprised of automobile dealers who are active market

participants and who directly compete against Tesla.  Am. Compl. ¶ 14.

    As evidence of the conspiracy, Tesla alleged, *inter alia*, that at the

urging of LADA members, the Commission adopted a purportedly new

and "strained" interpretation of the "fleet owner" exception to

Louisiana's ban on direct-to-consumer warranty-repair services and

issued subpoenas to Tesla to determine whether Tesla was in violation

of this new interpretation of a fleet owner's permitted activities.  Am.

Compl.  ¶¶ 191-98, 202-07, 262.  Tesla further alleged that the

commissioners voted to uphold and enforce one of those subpoenas.  *Id.*

¶¶ 222-30.

    After Tesla's efforts to challenge the subpoena before the

Commission failed, Tesla sued in state and federal court.  Am. Compl.

¶¶ 209-32.  The federal suit asserted a variety of state and federal

3

claims, including a claim that defendants violated Section 1 of the
Sherman Act under either the per se rule or the rule of reason. *Id.*
¶¶ 237-68.

2.  On June 16, 2023, the district court dismissed Tesla's amended
complaint with prejudice. Op., Dkt. 182, at 86. The district court held
the private defendants' conduct was protected under the *Noerr-
Pennington* doctrine, which prevented them from being held liable
under Section 1. *Id.* at 31-32. The court dismissed the Section 1 claim
against the commissioner defendants in their official capacities on the
ground that Tesla failed to state a claim against them. *Id.* at 40. The
court reasoned, first, that the amended complaint did not plausibly
allege that "an agreement was made." *Id.* (internal quotation marks
omitted). As the court explained, "Tesla has failed to 'allege any specific
*facts* demonstrating an intention on the part of' each of the
commissioners 'to engage in a conspiracy' to exclude Tesla from
operating in the Louisiana motor vehicle market." *Id.* at 40-41 (quoting
*Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 375 (5th Cir. 2014)
(emphasis in original)); *see also id.* at 46 ("Tesla's allegations do not

raise a reasonable expectation that discovery will reveal evidence of an illegal agreement.") (internal quotation marks omitted).

In an apparent alternative holding, the district court then stated: "Nor do Tesla's allegations 'demonstrat[e] an intention on the part of' the commissioners 'to engage in a conspiracy' *for the purpose* of 'restrain[ing] trade.'" Op. at 46 (quoting *Marucci*, 751 F.3d at 375) (emphasis added). The court explained that "Tesla has not plausibly alleged that the commissioners reached an agreement with LADA to investigate Tesla's business operations in Louisiana, much less that any such agreement was made with the *intention* 'to achieve an unlawful objective.'" *Id.* at 47 (quoting *Marucci*, 751 F.3d at 375) (emphasis added). The court so held despite having recognized that, to establish a violation of Section 1 under the rule of reason, a plaintiff need only show that the defendants "engaged in a conspiracy" that "*produced some anticompetitive effect* . . . in the relevant market." *Id.* at 23 (quoting *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 327 (5th Cir. 2014)) (emphasis added).

## SUMMARY OF ARGUMENT

The district court erred in stating that Tesla was required to show that the commissioners had a "purpose" of restraining trade or "inten[ded] to achieve an unlawful objective," Op. 46-47 (hereinafter "anticompetitive purpose"). There is no such requirement to state a claim under Section 1. Anticompetitive purpose is not required to satisfy either primary element of a Section 1 claim: (1) concerted action (a contract, combination, conspiracy, or other form of agreement) that (2) is unreasonable (i.e., anticompetitive). Rather, it can suffice to show that an agreement has an anticompetitive effect.

I. Concerted action does not require an anticompetitive purpose. Both this Court and the Supreme Court have defined concerted action broadly and held that, at this "threshold" step of Section 1 analysis, justifications for an alleged restraint are "irrelevant to whether there was concerted or independent action." *Abraham & Veneklasen*, 776 F.3d at 328 (citing *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 199 (2010)). Even an indisputably procompetitive agreement would satisfy the concerted-action element of a Section 1 claim. *See Am. Needle*, 560 U.S. at 202-03.

This Court's decision in *Marucci*, on which the district court relied, is not to the contrary. *Marucci* addressed whether the plaintiff adequately alleged the existence of the relevant conspiracy; the case did not endorse an anticompetitive-purpose requirement. The district court's decision here added language to its *Marucci* quotations that gave them a substantially different meaning.

II. Anticompetitive purpose also is not required to make an agreement unreasonable. It is well established that, "in a civil action under the Sherman Act, liability may be established by proof of *either* an unlawful purpose or an anticompetitive effect." *N. Texas Specialty Physicians v. FTC*, 528 F.3d 346, 355 (5th Cir. 2008) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 330 (1991) (emphasis in original)).

## ARGUMENT

If it reaches the district court's apparent alternate holding, this Court should make clear that, contrary to statements in the decision below, there is no anticompetitive-purpose requirement for a Section 1 claim. 15 U.S.C. § 1. The Supreme Court has identified two primary elements for such a claim: (i) whether an arrangement is a "contract, combination, or conspiracy"—"concerted action"; and (ii) whether that

concerted action "unreasonably restrains trade."[2]  *Am. Needle*, 560 U.S. at 186.[3]  A showing of anticompetitive purpose is not required to satisfy either element.

---

[2] Plaintiffs also must show that the alleged restraint of trade substantially affected, or occurred in the flow of, interstate or foreign commerce.  *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241 (1980).  In addition, private antitrust plaintiffs must show "antitrust injury," *Pulse Network, LLC v. Visa, Inc.*, 30 F.4th 480, 488 (5th Cir. 2022), though that requirement is inapplicable in federal antitrust enforcement actions.  Finally, as discussed in Section II.2, *infra*, there is an intent element for *criminal* rather than civil Section 1 offenses, but it does not require proof of an anticompetitive purpose.

[3] *See also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010) (listing a Section 1 claim's "two essential requirements": (i) "some form of concerted action," that (ii) "imposed an unreasonable restraint on trade" (citations omitted)); *accord Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 17 (1st Cir. 2004); *Cap. Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 541 (2d Cir. 1993); *Valuepest.com of Charlotte, Inc. v. Bayer Corp.*, 561 F.3d 282, 286 (4th Cir. 2009); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058 (8th Cir. 2000); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp. in U.S.A.*, 533 F.2d 510, 516 (10th Cir. 1976).  This Court has used a slightly different formulation of the elements of a Section 1 claim, stating that "plaintiffs must show that the defendants (1) engaged in a conspiracy (2) that produced some anticompetitive effect (3) in the relevant market."  *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 392 (5th Cir. 1996); *see also BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 525 (5th Cir. 2022) ("To establish a Section 1 violation, 'a plaintiff must show that the defendant[ ] (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market.'"), *cert. denied*, 143 S. Ct. 2457 (2023).  But these differences in the formulation are not relevant to this brief, as this Court's standard simply provides a more detailed elaboration of the second element (unreasonableness),

## I. CONCERTED ACTION DOES NOT REQUIRE AN ANTICOMPETITIVE PURPOSE

1. The first primary element in a Section 1 claim is the existence of concerted action. The concerted-action requirement plays an important gatekeeping function under Section 1. It reflects Congress's decision to treat "concerted behavior . . . strictly" because concerted action is "inherently [] fraught with anticompetitive risk." *Am. Needle*, 560 U.S. at 190 (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768-69 (1984)).

Concerted action is not limited to secret conspiracies hashed out in smoke-filled rooms. Among other types of joint conduct, concerted action includes licensing contracts, *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 10 (1979); distribution restraints, *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 45-46 (1977); information exchanges, *United States v. Container Corp. of Am.*, 393 U.S. 333, 334-37 (1969); association rules, *Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*, 61 F.4th 299, 303 (2d Cir. 2023); standard-setting, *Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 571

_____

making clear that the anticompetitive effect must be in the relevant market.

(1982)*; regulatory actions, N.C. State Bd. of Dental Exam'rs v. FTC*, 574

U.S. 494, 501 (2015); boycotts, *Klor's, Inc. v. Broadway-Hale Stores,*

*Inc.*, 359 U.S. 207, 210-12 (1959); mergers, *United States v. First Nat.*

*Bank & Tr. Co. of Lexington*, 376 U.S. 665, 669-70 (1964); and joint

ventures, *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d

210, 214-15 (D.C. Cir. 1986).

As *American Needle* explained, the "key" to concerted action is

whether the challenged conduct "joins together separate

decisionmakers" and thus "deprives the marketplace of independent

centers of decisionmaking." 560 U.S. at 195 (citations omitted). If such

joining exists, there is concerted action, regardless of defendants'

underlying purpose. *Id.* at 196. "The justification for cooperation is not

relevant to whether that cooperation is concerted or independent

action." *Id.* at 199; *see also Abraham & Veneklasen*, 776 F.3d at 328

(following *American Needle*'s holding that justifications for allegedly

anticompetitive restraints are "irrelevant to whether there was

concerted or independent action at the threshold of Section 1 analysis.").

There may be "a perfectly sensible justification for making a host of

collective decisions," but they are still concerted action under Section 1.

*American Needle*, 560 U.S. at 202; *see also id.* at 202-03 (discussing agreements that are "likely to survive the Rule of Reason" but nonetheless are "concerted activity" under Section 1).

2. In distinguishing between independent and concerted action, this Court has sometimes followed language in *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752 (1984), stating that concerted action requires "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.* at 764 (quoting *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 111 (3rd Cir. 1980)). *See, e.g.*, *Marucci*, 751 F.3d. at 374-75; *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271-73 (5th Cir. 2008); *Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 409 (5th Cir. 2007). But a "conscious commitment to a common scheme" does not depend on, or imply a requirement for, an anticompetitive purpose. Both *Sweeney* and *Monsanto* applied and quoted the test for concerted action from *American Tobacco v. United States*, 328 U.S. 781, 810 (1946), which provided only that the "[c]ircumstances must reveal 'a unity of purpose *or* a common design and understanding, *or* a meeting of minds in an unlawful arrangement." *Monsanto*, 465 U.S. at 764 (emphases added);

11

*Sweeney*, 637 F.2d at 111 (same). The key to all these formulations is the factfinder's ability to infer that an *agreement* exists, not the factfinder's ability to infer the agreement's purpose.

Indeed, at least five times since *Monsanto*, the Supreme Court has addressed *Monsanto*'s concerted-action language without suggesting it requires an anticompetitive purpose.[4] Lower courts construing *Monsanto* also have recognized that "the evidence need not show that the co-conspirators specifically intended to restrain trade or to monopolize." *Bolt v. Halifax Hospital Medical Center*, 891 F.2d 810, 819-20 (11th Cir. 1990), *overruled in part on other grounds by City of Columbia v. Omni Outdoor Adver.*, 499 U.S. 365 (1991); *accord Geneva*

---

[4] *American Needle* and *Copperweld* cite *Monsanto* for the "basic distinction . . . between concerted and independent action." *American Needle*, 560 U.S. at 190; *Copperweld*, 467 U.S. at 767. *Leegin*, *Twombly*, and *Matsushita* rely on *Monsanto*'s holding that a plaintiff alleging a Section 1 conspiracy must present evidence tending to exclude the possibility of independent action. *Leegin Creative Leather Prod., Inc. v. PSKS*, Inc., 551 U.S. 877, 901 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). While this brief addresses what conduct substantively qualifies as concerted action, it does not address the related evidentiary issue of when an agreement can be inferred from circumstantial evidence under *Monsanto* or *Matsushita* or the related pleading issue of when allegations of an agreement are sufficiently plausible under *Twombly* to defeat a motion to dismiss for failure to state a claim.

*Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 507 (2d Cir.

2004); *United States v. Apple, Inc.*, 952 F. Supp. 2d 638, 689 (S.D.N.Y.

2013), *aff'd*, 791 F.3d 290 (2d Cir. 2015). *See generally* Marc A. Fajer,

*Taming the Wayward Children of Monsanto and Sylvania: Some*

*Thoughts on Developmental Disorders in Vertical Restraints Doctrine*,

68 Temp. L. Rev. 1, 47 n.248 (1995) ("Given the traditional lack of a

scienter requirement [for civil Section 1 claims], the most logical

reading of 'conscious commitment to a common scheme designed to

achieve an unlawful objective' is concerted action to achieve an end,

which later is determined to be unlawful.").

3.  In holding that Tesla failed plausibly to allege an

anticompetitive purpose, the district court relied on this Court's

decision in *Marucci*. But *Marucci* did not adopt such a requirement.

Instead, *Marucci* merely addressed whether the plaintiff

adequately alleged the existence of the challenged conspiracy. This

Court stated that there obviously was concerted action among various

entities in establishing and enforcing the "BBCOR" standard for "how

fast a ball comes off the bat on contact." *Id.* at 372, 375. But that was

not the challenged conduct. Rather, plaintiffs had alleged a broader,

13

secret conspiracy to exclude certain bat manufacturers. *Id.* at 375. This Court upheld the dismissal of the complaint because the plaintiffs had not alleged "specific facts demonstrating an intention on the part of" the defendants to engage in that broader, secret conspiracy— specifically, the allegations failed to establish a "meeting of the minds" on that agreement. *Id.* ("The Second Amended Complaint does not . . . allege any specific facts demonstrating an intention on the part of [the defendants] or any other party to engage in [such] a conspiracy."); *id.* ("the Second Amended Complaint does not set forth facts that demonstrate a 'meeting of the minds' between the . . . alleged conspirators" (citation omitted)).

The district court transformed this straightforward holding about a meeting of the minds into a novel anticompetitive-purpose requirement. Indeed, the district court added language to its *Marucci* quotations, giving them a substantially different meaning. For example, *Marucci* noted that the complaint did not allege "specific facts demonstrating an intention on the part of [the defendants] or any other party to engage in a conspiracy." 751 F.3d at 375. The *Marucci* Court later explained that the "pivotal question is whether the concerted

action was a result of an agreement . . . to unreasonably restrain trade."
751 F.3d at 375. The district court here combined and transformed
those passages, adding a "purpose" requirement absent from *Marucci*'s
text: "Nor do Tesla's allegations 'demonstrat[e] an intention on the part
of' the commissioners 'to engage in a conspiracy' *for the purpose of*
'unreasonably restrain[ing] trade.' *Marucci*, 751 F.3d at 375." Op. 46
(emphasis added).

It is possible that, rather than inadvertently adding a new
requirement to Section 1, the district court simply meant to convey
something equivalent to *Marucci*'s holding—that there may have been
*some* concerted action among the commissioners enforcing the subpoena
but that plaintiffs had not plausibly alleged the specific conspiracy set
out in the complaint. Should this Court construe the decision in that
way, it would be helpful for the Court to say so in its opinion and to
make clear that the additional anticompetitive-purpose language was
mistaken.

## II.   UNREASONABLENESS DOES NOT REQUIRE AN ANTICOMPETITIVE PURPOSE

Because concerted action is not, by itself, unlawful, a Section 1
plaintiff also must show that the concerted action unreasonably

restrains trade (the second primary element of a Section 1 claim). *See* pp.7-8, *supra*. But, as with concerted action, unreasonableness does not require an anticompetitive purpose.

1. A civil violation of Section 1 can be established by proof of "*either* an unlawful purpose or an anticompetitive effect." *Summit Health,* 500 U.S. at 330 (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 243 (1980) (emphasis in original)); *accord United States v. United States Gypsum Co.*, 438 U.S. 422, 436 n.13 (1978) (same); *N. Texas Specialty Physicians*, 528 F.3d at 355 (same). For that reason, it is "not always necessary to find a specific intent to restrain trade or to build a monopoly in order to find that the anti-trust laws have been violated." *United States v. Griffith*, 334 U. S. 100, 105 (1948), *disapproved on other grounds by Copperweld*, 467 U.S. at 763 n.8. Rather, "[i]t is sufficient that a restraint of trade or monopoly results as the consequence of a defendant's conduct or business arrangements." *Id.* Indeed, restraints "can be unreasonable in one of two ways": either under the per se rule or under the rule of reason. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283-84 (2018). And anticompetitive purpose is not required under either rule.

16

To establish liability under the per se rule, it is sufficient to show that the agreed-upon restraint falls within one of the "classes of restraints which from their nature or character were unduly restrictive, and hence forbidden by both the common law and the statute." *Klor's*, 359 U.S. at 211 (internal quotation marks omitted); *see also Tunica*, 496 F.3d at 412 (certain "types of agreements" are "per se violations of section 1"). Such restraints—including price fixing, bid rigging, and market allocation—"are all banned because of their actual or potential threat to the central nervous system of the economy." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) (discussing price-fixing); *see also, e.g.*, *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990) (discussing market allocation); *Arizona v. Maricopa Cnty. Med. Soc.*, 457 U.S. 332, 351 & n.23 (1982) ("the *per se* rule" does not permit inquiry into "procompetitive justifications"); *United States v. Koppers Co.*, 652 F.2d 290, 293 (2d Cir. 1981) (discussing bid rigging). By the same token, "[i]t makes no difference whether the motives of the participants are good or evil." *United States v. McKesson & Robbins, Inc.*, 351 U.S. 305, 310 (1956); *see also FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 427 (1990) ("No matter how altruistic the

17

motives of respondents may have been, it is undisputed that their immediate objective was to increase the price that they would be paid for their services.").

Nor is an anticompetitive purpose required for a restraint to be held unlawful under the rule of reason. *See Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1492-93 (D.C. Cir. 1984) (rejecting the notion that "the absence of anticompetitive intent is determinative" under the rule of reason). Under the rule of reason, courts generally conduct "market analysis" and focus on whether the "effect" of the challenged restraint "enhances competition." *NCAA v. Bd. of Regents of Univ. of Oklahoma,* 468 U.S. 85, 104 (1984).[5] And, here too, it is "well settled that good motives will not validate an otherwise anticompetitive practice." *Id.* at 101 n.23; *see also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 496 (1949) ("More than thirty years ago this Court said, . . . 'It is too late in the day to assert against statutes which forbid combinations of competing companies that a particular combination was induced by good intentions.'" (quoting *International Harvester Co.*

---

[5] Courts often apply a burden-shifting approach focusing on the agreement's competitive effects. *See Impax Labs., Inc. v. FTC*, 994 F.3d 484, 492 (5th Cir. 2021).

*v. Missouri*, 234 U.S. 199, 209 (1914))); *United States v. Brown Univ. in*

*Providence in State of R.I.*, 5 F.3d 658, 672 (3d Cir. 1993) (even an

"alleged pure altruistic motive and alleged absence of a revenue

maximizing purpose" does not automatically mean an agreement is

reasonable).[6]

2. Although "intent is an element of a *criminal* antitrust offense,"

*Gypsum*, 438 U.S. at 435 (emphasis added), even that requirement does

---

[6] In one line of cases going back to *Kaplan v. Burroughs Corp.*, 611 F.2d 286 (9th Cir. 1979), the Ninth Circuit has identified intent to restrain trade as a component of unreasonableness. But other Ninth Circuit decisions properly hold that "the Sherman Act bases liability on proof of either 'an unlawful purpose' or 'an anticompetitive effect.'" *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 818 n.2 (9th Cir. 1982) (quoting *McLain*, 444 U.S. at 243); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987). In any event, *Kaplan* derived the ostensible requirement from *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 615 (1953); *Gough v. Rossmoor Corp.*, 585 F.2d 381, 389 (9th Cir. 1978); and *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429 (9th Cir. 1979). But none of those cases support *Kaplan*'s formulation. *Times-Picayune* followed *United States v. Columbia Steel Co.*, 334 U.S. 495, 522 (1948), in holding that "the requisite intent is inferred whenever unlawful effects are found"; *Times-Picayune* also stated that, even if not per se unlawful, "the contracts may yet be banned by § 1 if unreasonable restraint was either their object or effect." 345 U.S. at 614. *Gough* involved interrogatories referencing intent to exclude competition but never stated that intent was necessary for unreasonableness—which the court said turned on an analysis of effects on competition in the relevant market. 585 F.2d at 389. And *Sherman* only referenced defendant's intent to exclude competition as a "primary consideration[]." 601 F.2d at 449.

not demand an anticompetitive purpose. Where the defendant is charged with a per se violation, "[t]he intent element . . . is established by evidence that the defendant agreed to engage in" the prohibited conduct; "the government is not required to prove that the defendant . . . specifically intended to restrain trade or to violate the law." *United States v. All Star Indus.*, 962 F.2d 465, 474 n.18 (5th Cir. 1992), *disapproved on other grounds by United States v. Calverley*, 37 F.3d 160, 163 n.20 (5th Cir. 1994) (en banc); *see also, e.g.*, *United States v. Brown*, 936 F.2d 1042, 1046 (9th Cir. 1991) (requisite intent is "intent to conspire to commit the offense"—not a more generalized intent to restrain trade unreasonably) (quoting *Koppers*, 652 F.2d at 296 n.6).[7] The district court's formulation thus risks not only imposing an intent requirement in civil cases (where intent is not an element), but also

---

[7] As a matter of prosecutorial discretion, the government generally brings criminal antitrust prosecutions under Section 1 only based on conduct that violates the per se rule. *See Justice Manual* 7-2.200, https://www.justice.gov/jm/jm-7-2000-prior-approvals (last visited Oct. 18, 2023). Even if the government were to bring a Section 1 prosecution based on conduct that violates the rule of reason, proof of an anticompetitive purpose still would not be required; it would suffice for the government to prove either (i) "knowledge" that anticompetitive "effects would most likely follow" *or* (ii) the "purpose of producing" such effects. *Gypsum*, 438 U.S. at 427-29, 440, 441 n.16, 444 & n.21.

making that ostensible requirement more stringent than the criminal standard.

# CONCLUSION

This Court should make clear that establishing a claim under Section 1 of the Sherman Act does not require proof of an anticompetitive purpose.

Respectfully submitted.

/s/ Matthew C. Mandelberg

JONATHAN S. KANTER
  *Assistant Attorney General*
DOHA MEKKI
  *Principal Deputy Assistant Attorney General*
MAGGIE GOODLANDER
  *Deputy Assistant Attorney General*
DAVID B. LAWRENCE
  *Policy Director*
JACOBUS VAN DER VEN
  *Counsel to the Assistant Attorney General*

NICKOLAI G. LEVIN
STRATTON C. STRAND
MATTHEW C. MANDELBERG
BRANDON STORM
  *Attorneys*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W., Room 3224
Washington, D.C. 20530-0001
(202) 476-0483
matthew.mandelberg@usdoj.gov

*Counsel for the United States of America*

October 19, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(a)(4)(G) and Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of 5th Cir. R. 29.3 and Fed. R. App. P. 29(a)(5) because, excluding the parts exempted by Fed. R. App. P. 32(f), this brief contains 4349 words.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in Microsoft Office Word 365 using 14-point New Century Schoolbook font.

October 19, 2023                  /s/ Matthew C. Mandelberg
                                  *Counsel for the United States of America*